40 C.C.P.A. (Patents)

**BEADLE et al. v. ROSENWALD et al.**

**Patent Appeal No. 5953.**
United States Court of Customs and Patent Appeals.
June 3, 1953.

Rehearing Denied Sept. 28, 1953.

Brown, Jackson, Boettcher & Dienner, Washington, D. C. (John A. Dienner, Washington, D. C., of counsel), for appellants.

Charles M. Thomas and M. M. Weisman, Washington, D. C., for appellees.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Judges.

WORLEY, Judge.

This is an appeal in an interference proceeding from the decision of the Board of Interference Examiners of the United

States Patent Office awarding priority of invention of the subject matter defined by the counts in issue (Nos. 1 to 4, inclusive) to Rosenwald and Chenicek, hereinafter usually referred to as appellees, as joint inventors of a compound for "Stabilization of Edible Oils and Fats."

The counts read as follows:

"1. A method of stabilizing animal and vegetable fats and oils against rancidity which comprises incorporating therein a small amount of a 2-tertiary-alkyl-4-alkoxyphenol.

"2. A method of stabilizing animal and vegetable fats and oils against rancidity which comprises incorporating therein a small amount of 2-tertiary-butyl-4-methoxyphenol.

"3. Animal and vegetable fats and oils normally tending to become rancid having incorporated therein a small amount of a 2-tertiary-4-alkoxyphenol.

"4. Animal and vegetable fats and oils normally tending to become rancid having incorporated therein a small amount of a 2-tertiary-alkyl-4-alkoxyphenol."

The interference involves an application of appellees, Serial No. 624,318, filed October 24, 1945, and an application of appellants, Serial No. 660,302, filed April 6, 1946. Appellants Beadle and Kraybill, being the junior parties, have the burden of proving priority of invention by a preponderance of the evidence.

Both parties took testimony and introduced in evidence a number of documentary exhibits.

Appellants are assignors to the American Meat Institute and appellees to the Universal Oil Products Company, which are the real parties in interest. The former, hereinafter referred to as A.M.I., is a nonprofit trade organization supported by contributions from the meat-packing industry, and the latter, hereinafter referred to as U. O.P., is an organization devoted to research, development and engineering work and derives a substantial part of its income from patent developments.

The issues before us are questions of fact. Each of the parties claims originality of the invention as well as derivation of the invention by their opponents.

Appellants' preliminary statement alleged first written description of the invention on or about July 11, 1945; first disclosure to others on or about September 11, 1945; reduction to practice on or about September 13, 1945; beginning the exercise of reasonable diligence in perfecting the invention on or about July 19, 1945; and no acts other than the acts herein specified to establish conception of the invention as set forth in the declaration of the interference.

Appellees, in their preliminary statement, alleged conception of the involved invention on February 6, 1939; that on or about June 16, 1939, the invention was first disclosed to others; that on or about May 10, 1944, they made the first written description of the invention; that on or about May 16, 1944, the invention as set forth in the counts was first disclosed to one of appellants; that the invention was successfully reduced to practice between May 16 and June 5, 1944, and that the date of the beginning of continued active exercise of reasonable diligence in perfecting the invention was February 6, 1939.

The involved invention relates to stabilizing edible oils and fats, and more particularly to inhibiting the development of rancidity therein. Many heretofore known compounds inhibit such rancidity but were found to be unsuitable by reason of being toxic in their effects or imparting disagreeable odor or taste. Some volitilize during cooking and others are insoluble in oils and fats.

It is obviously desirable that the effect of an inhibitor carry over into the products of the bakery, some of which, crackers for example, remain for some time in stores or homes before being used. They thus tend to become rancid. Some of the known inhibitors in edible oils and fats are quite potent but do not possess the quality of carrying over their effects into bakery products. The object of the involved invention is to provide a novel class of inhibitors which not only retard the deterioration of edible fats and oils but will also retard the development of rancidity in bakery goods.

After a meticulous examination and careful evaluation of the evidence submitted by both parties, the Board of Appeals held that appellees were the first to conceive the invention defined by all of the counts as of June 10, 1944, and constructive reduction to practice as of their filing date, October 24, 1945. Appellants were awarded for date of conception September 28, 1945, and for date of reduction to practice April 4, 1946, their filing date.

The issue of priority of conception is the principle issue before us, although other controversial points have been raised by appellants which will unfold in the review of this case.

It may be stated that the opinion of the board comprehensively covered every phase of the present litigation and has clearly outlined the order of critical performances of the parties.

After a thorough examination of the record, we deem it proper to sketch the historical background of the case leading up to the award of priority.

During the period of interest, Rosenwald and Chenicek were engaged in research activities for U.O.P. Although the testimony of only Chenicek was adduced, there is no question of Rosenwald's joint inventorship. Witnesses appearing for appellees included Venema, a chemical engineer, member of the bar, vice president, and head of the patent department of U.O.P.; Kramer, its patent attorney; and Lowry, employed by U.O.P. for twenty-three years, who was in charge of sales of antioxidants (primarily for gasoline) for that company. Lowry held the degree of Doctor of Philosophy in organic chemistry, with practical experience on antioxidants and in biochemistry, although during the critical period he was engaged in sales of the products of U.O.P. He had been employed from 1925 to 1927 by A.M.I. and was acquainted, to some extent, with its personnel. Because his work caused him to adopt a liaison capacity between the companies, as was properly stated by the board, "his rôle in a manner of speaking was instrumental in bringing about the invention."

During the inventive and critical period of the present proceeding, appellant Kraybill was director of research at A.M.I. and Beadle was engaged in research under Kraybill's supervision. Testifying in their behalf was Stone, secretary-treasurer of A.M.I.; Miss Lydia Smith, who made antioxidant tests for Beadle; Miss Swartz who tested cooked products for stability; Wilder, who conducted toxicity tests; Vibrans, who tested the antioxidant effects of compounds; and the president of A.M.I., Hardenbergh.

The crucial dates of the activities of the parties are as follows:

"Before May 1944: Activity by appellees only.
"May and June 1944: Cooperative activity between the parties.

"Between June 1944 and June 1945: No activity.
"After September 1945: Intense activity, both cooperative and separate, followed by deterioration of relationship of the parties."

On February 9, 1943, a patent, Serial No. 2,310,710, issued to appellees, assigned to U.O.P., on an application filed September 18, 1939, for 2-tertiary-butyl-4-methoxy-phenol as an inhibitor for gasoline. The invention was directed to a method for stabilizing olefin-containing gasolines during storage which tend to depreciate due to the action of oxygen on the olefins. This is mentioned to illustrate that appellees, long prior to May 1944, were completely familiar with the compound 2-tertiary-butyl-4-methoxy-phenol and related compounds in connection with their potent antioxidant effects on gasolines.

The record discloses that late in 1943, Chenicek, in a conference with Lowry, mentioned that the compound 2-tertiary-

butyl-4-methoxyphenol should be tried out in the field of edible fats, and that it had potential possibilities as being useful in that field.

Lowry's testimony on this phase of the proceedings was to the effect that the involved antioxidant was disclosed to him by Chenicek in 1943 by the code number 557–35; that he was in close touch with the research men of U.O.P. because, being a technical man, he wished to know all the technical aspects as they affected his selling program; that the said researchers of antioxidants desired to find something promising for use in the edible fat field and suspected that the involved antioxidant might be effective; that he learned of the problem of finding an antioxidant for lard through study and in talks with a Dr. Lewis who was Dr. Kraybill's predecessor at A.M.I.; and that although he had kept the research men aware of such a problem, the suggestion to try out such an antioxidant on edible fats came from them.

The witness Lowry further testified that there was no question in his mind but that Rosenwald and Chenicek were the co-discoverers of this compound and at that time, the latter part of 1943, had even suggested its patentable possibilities for use in edible fats and oils.

The witness Kramer testified his company had no means in its laboratories for testing the antioxidant on edible fats, more specifically lard, and that Lowry was to await an opportunity for having it tested elsewhere.

During this same period, A.M.I. had no knowledge of the existence of the compound in question but were engaged in a program of testing any possible compound for its antioxidant effect on lard. Unless the outcome of the tests were particularly outstanding, little interest was evinced for the reasons that, their primary interest being in the field of lard, and the approval being required by the Federal Meat Inspection Division in incorporating an antioxidant in lard for sale, the expense of some thirty thousand dollars to conduct the tests were considered to be prohibitive. The other reason was that A.M.I. already possessed a compound known as NDGA and, although

relatively expensive, it was very potent as an inhibitor although it possessed no "carry through" or "carrying over" properties.

The period of May-June 1944 brought about an accidental meeting between Lowry and appellant Kraybill, the result of which was that Lowry sent him a sample of 2-tertiary-butyl-4-methoxyphenol, identified merely as 557–35, while U.O.P. in exchange was sent a sample of NDGA. The board here stated:

" * * * The *res gestae* of this encounter are in sharp dispute between the parties but they are important to the question of derivation and that question is important in a sense for if there was derivation inventorship would reside in only one of the parties and that one would be entitled to the award of priority regardless of what occurred later. In an equally important sense if conception were established in this period by one of the parties, excluding derivation, that would be likewise determinative of the outcome because of the sequence of inventive acts which occurred later and which as to occurrence are not in dispute. Either way the events of this period are important to the outcome and further it is evident that the question need be considered only with respect to Rosenwald and Chenicek *since Kraybill admittedly did not know the identity of U.O.P. 557–35 for more than a year thereafter. * * *"* (Italics ours.)

In a letter dated June 5, 1944, the results of the tests conducted by A.M.I. on the 557–35 sample was made known to U.O.P. through Lowry. The testimony discloses that the test of the compound 557–35 was found to be tentatively a potent antioxidant for lard but not as potent as NDGA, A.M.I.'s antioxidant.

From that date until one year later, neither of the parties engaged in any activity relative to 557–35 inasmuch as the compound was not sufficiently competitive (or such was the opinion) with NDGA, and because of the great expense which would be involved in conducting further necessary toxicity tests. In its opinion, the board stated: "If an inventive act was involved in

the earlier work it is evident from this prolonged subsequent inactivity that it was coupled with an abandoned experiment thus precluding any holding of reduction to practice but not excluding a holding of conception. In this period U.O.P. 557–35 was practically forgotten but in the final period commencing about June 1945 it again became an object of interest."

At some time during that year of inactivity, A.M.I. continued to conduct tests on antioxidants for lard, other than 557–35, with regard to the "carry through" qualities, and early in the summer of 1945 a tentative line of research indicated that the high solubility of a compound in lard might be coupled with the "carry through" property which activity recalled to Beadle's memory that such a compound had been tested. That compound proved to be U.O.P.'s 557–35 and experiments conducted in June of that year showed that phosphoric and thiodipropionic acids were synergists for the compound 557–35; that is, they enhanced its activity. By the middle of September 1945, tests conducted by A.M.I. proved conclusively that U.O.P.'s 557–35 contained very good "carry through" properties, thus attaining great potential value, and exceeding in all requirements any compound known to A.M.I. as an ideal antioxidant for edible fats.

While appellants were thus in possession of valuable knowledge with regard to the "carry through" properties of the compound, *they had no knowledge whatsoever of the chemical identity of the compound itself which was known only to U.O.P.* It also appears that they were not aware of the fact that a patent had issued to appellees for that compound.

Appellants made no efforts to run chemical analyses on the compound but on or about September 25, 1945, Kraybill requested Lowry to visit him and at that time asked for the identity of the compound 557–35. On receiving due permission, Lowry disclosed the identity of the compound 557–35 and in addition furnished appellants with a copy of the patent issued to appellees.

On October 4, 1945, a meeting was had by the parties for the purpose of discussing the possible patent aspects of the situation.

Representing American Meat Institute at this meeting was Beadle, Kraybill, and Stone. Universal Oil Products Company was represented by Chenicek, Rosenwald, Lowry, Danforth, Venema and Kramer. Exhibit 12, which consists of a résumé of the meeting and written by Kraybill, and appellees documentary exhibit IV, written by Venema covering the same meeting, are substantially in agreement that U.O.P. should file an application for a patent for the use of the compound 557–35 as an inhibitor for the oxidation of edible fats, and that A.M.I. should file an application for a patent for the use of a synergist with the antioxidant. The testimony of record clearly indicates that U.O.P. was of the opinion that the broad invention was either covered by their patent or that additional claims could be filed covering it. They further felt that the use of the synergist with the inhibitor was clearly the invention of A.M.I. and that they, appellants, should file an application covering such use.

Subsequent to that meeting, appellants conducted toxicity tests on the compound 557–35 and on October 24, 1945, Rosenwald and Chenicek filed their application. The toxicity tests on the compound were then continued for about two years when Federal approval was obtained for use of the compound in edible fats and oils. Approximately six months after the filing of the application by Rosenwald and Chenicek, appellants, on April 6, 1946, filed their application for a patent for the compound at bar.

Almost immediately after the meeting of October 4, 1945, appellees submitted to appellants five additional, different but related, promising antioxidants for testing, identified respectively as U.O.P. 576–22, U.O.P. 576–60, U.O.P. 576–74, U.O.P. 576–86, and U.O.P. 1441–25. Tests run by A.M.I. on those five additional compounds proved them effective as inhibitors. Those tests, however, were of a preliminary nature and did not include testing at that time for "carry through" properties, although such tests were conducted and completed by January 30, 1946, and appellants incorporated and claimed inventorship of those five compounds in their application. As pointed out by the board, those five compounds are

not specifically in issue except as they pertain to the issue of "carry through" element of conception of the invention and also as to the question of derivation. The patent issued to appellees discloses four of those five additional compounds and because of their close alliance with the compound 557–35, they stand or fall in the same category. A fifth compound, namely, 2–5 ditertiary-butyl 4 methoxyphenol, is not so closely related and is not mentioned in the patent of appellees. Appellants also claimed that compound in their application in spite of the fact that it was one of the compounds submitted by appellees for testing by appellants.

Subsequent to this time, all efforts on the part of U.O.P. to maintain a cooperative basis of work received no favorable response from A.M.I. which disclosed the compounds to the Tennessee Eastman Company which, in turn contributed funds and materials for toxicity experiments on said compounds.

On the question of actual reduction to practice, the board stated that

"* * * it must be held in view of the evidenced intended purpose in the actual experimentation, namely use in small amount in an edible fat exemplified by lard, that the parties did not reduce to practice before their filing dates. To mention but one item the toxicity tests were not completed until long after the filing dates and until they were completed the matter of reduction to practice as regards an edible product was still in the realm of uncertainty. * * * Rosenwald and Chenicek's date of reduction to practice is consequently their filing date October 24, 1945 and Kraybill's earliest is their filing date six months later on April 4, 1946."

On the issue of conception, the evidence of record clearly discloses that appellants were completely ignorant of the identity of the compound in issue until it was disclosed to them on September 28, 1945, by Lowry in behalf of Rosenwald and Chenicek, although tests by them on the compound 557–35 had been conducted over a period starting about June 1, 1944, when it was first submitted to them by Lowry for testing as an antioxidant for edible fats. Conception cannot be predicated prior to appellants' knowledge of the identity of the compound in issue and that date was clearly September 28, 1945.

While the specifications of both parties recite the advantageous property of "carry through" into baked or fried products employing the compound in issue, the counts themselves are drawn to the broad language of stabilizing against rancidity of "animal and vegetable fats and oils," and, as pointed out by the board, the counts define patentable invention without the property of "carry through," and are broad enough to include such a species conception. The board stated:

"* * * This viewpoint is not in belittlement of Beadle and Kraybill's discovery of 'carry through' which is a most valuable and meritorious discovery. It is simply that the counts, while broad enough to be inclusive of carry through, nevertheless do not require it specifically and are inclusive of a patentable species which doesn't even involve it."

After a careful analysis of the evidence, the board held that appellants had derived the invention from appellees and awarded priority of conception of the involved invention to appellees on the basis of the results of appellants' tests on compound 557–35 transmitted by letter to Lowry about June 5, 1944. The board stated, and we believe correctly, that those tests "were not inventive in character but simply routine and well known in the art and as such constitute merely an ancillary contribution to the main inventive concept by Rosenwald and Chenicek." Accordingly, Rosenwald and Chenicek were awarded priority of conception as of not later than June 10, 1944.

The contention of appellants that the matter of conception of the invention should correspond with the date of reduction to practice, because of the lack of predictability at each step of the work of conception, is untenable because appellees had reasonable

assurance that the antioxidant was effective by June 10, 1944, the date awarded them for priority of conception.

The record in this case fully substantiates the holding of the Board of Interference Examiners that appellees were the first to conceive and the first to reduce to practice the subject matter of the invention defined by the counts in issue.

The decision of the board is, accordingly, affirmed.

Affirmed.